## Tucker v. Tucker's Administrator, et al.

(Decided June 9, 1915.)

Appeal from Scott Circuit Court.

1. Husband and Wife—Marriage—Vested Rights of Husband—Not
   Affected by Act of 1894.—A marriage entered into before the
   passage, in 1894, of the statute known as the Weissinger Act, and
   the acquisition of real estate by the wife before that act, invested
   the husband with the statutory right then existing, to use or rent
   the wife's land and approprate and receve the profits or proceeds,
   which the legislature was without power to divest.

2. Husband and Wife—Personal Property of Wife—Effect of Hus-
   band's Conversion of Prior to Passage of Act of 1894—Also of His
   Conversion, as Long as He Lived, of Rents and Profits of Wife's
   Lands.—As, prior to the passage of the act of 1894, the personal·
   property of the wife, upon the husband's reducing it to possession,
   became his property, after his death his estate was not liable to
   his widow for money of hers which he reduced to possession and
   converted to his own use prior to the passage of the act; nor for
   rents or profits realized by him, previous to his death, upon or
   from lands to which she acquired title prior to the passage of
   the act of 1894.

LLEWLYN F. SINCLAIR for appellant.

JAS. BRADLEY, Guardian ad Litem, and BRADLEY & BRAD-
LEY for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

H. C. Tucker, a resident of Scott County, died in
1913, intestate, survived by his wife, Nannie Tucker, five
children, E. A. Tucker, George Tucker, Willie Burgess,
wife of Scott Burgess, Zella Tucker and Martha Tucker,
also a grandchild, Arthur Powers, son of a deceased
daughter. Zella Tucker, Martha Tucker and Arthur
Powers are infants, the first being over fourteen years
of age and the last two under fourteen years of age.
R. M. Hinton, a brother of the decedent's widow, by an

order of the Scott County Court, was appointed administrator of the decedent's estate and duly qualified as such.

The decedent owned at the time of his death a tract of land situated in Scott County, containing 103 acres, and personal property of less value than $1,000.00. After setting apart to the widow such of the personal property as the statute entitled her to take, the remainder was sold by the administrator and, its proceeds being insufficient to discharge the decedent's debts, the administrator brought this action to obtain a settlement of the estate and a sale of the land left by the decedent, subject to the widow's right of dower or homestead, that its proceeds, together with those arising from the sale of the personalty, might be applied to the payment of the indebtedness of the estate. The widow and heirs-at-law of the decedent, statutory guardians of such of the latter as are infants, and the known creditors of the estate, were made defendants to the action.

The widow, by answer, elected to claim a homestead in the land and asserted demands against the decedent's estate aggregating $5,095.84, the various items of which will later be considered. This claim and each item thereof was controverted by the answers of the infant heirs-at-law and their statutory guardians, and its payment resisted. After the taking of proof by the parties and the submission of the case, the circuit court, by the judgment rendered, rejected the whole of the widow's claim, but allowed her a homestead of the value of $1,000.00 in the land and directed the sale of the remainder for the payment of the decedent's debts. From that judgment she has appealed.

The claim of appellant of $5,095.84, asserted against the estate of her deceased husband, is made up of the following items: $700.00, given her at the time of her marriage, in 1881, by her father, which the husband received from her and invested in land to which he took title; various sums, aggregating $3,495.84, collected and appropriated by the husband in rents received on, and crops sold from, lands inherited by her from her father and to which she held the title, from 1889 down to 1912, inclusive; $400.00 the husband realized for timber which he sold from her lands in 1903 and again in 1910-11, and the proceeds of which he converted to his own use; and the further sum of $500.00, the amount of a note due the

estate of appellant's mother, Sallie Hinton, from her deceased husband, which was paid to the administrator of her mother out of money she inherited from the mother's estate as an heir-at-law, and proceeds of crops grown upon her lands, which were received and converted by the husband.

It appears from the agreed statement of facts made a part of the record in this case, that the appellant and her deceased husband, H. C. Tucker, were married in 1881, long prior to the enactment of Sections 2127, 2128, Kentucky Statutes, known as the Weissinger Act, which became effective March 15, 1894; that she inherited from her father, who died in 1891, an undivided interest in all the landed estate of which he was possessed, and that during that year, in a division had of such landed estate, there was allotted to the widow dower consisting of 475 acres and to appellant 110 acres, for which she then received a deed from the widow and other heirs-at-law. In addition to the 110 acres thus allotted and conveyed appellant, she then owned an undivided remainder interest in the dower of 475 acres allotted the widow, and when the latter died in 1905 there was a division of the dower land in which 32 acres thereof, adjoining her 110-acre tract, was allotted and by deed conveyed to appellant. Although appellant did not come into the possession of the 32-acre tract of land last mentioned until its allotment to her following the death of the widow, she acquired title thereto by and at the death of her father, subject to the widow's dower.

In disallowing appellant's claim, the judgment of the circuit court follows the construction repeatedly given the Weissinger Act by this court, which is, that where the marriage occurred and land was acquired by the wife prior to the passage of that act, such rights as Section 1, Article 2, Chapter 52, General Statutes, gave the husband in the land, are not divested by the Weissinger Act, which cannot be given a retrospective effect.

In Rose, etc., v. Rose, etc., 104 Ky., 48, in which the above doctrine was first announced, it is in the opinion said:

"It appears from the petition, to which the court sustained a demurrer, that the appellant is the wife of appellee J. A. Rose; that they were married in the year 1900; that a separation has taken place, which is permanent; that they will never live together as husband and

wife. It also appears from the petition that after the marriage took place, and before the passage of the act of 1894. (Sections 2127, 2128, Ky. Stats.), defining the rights of married women, the appellant by gift acquired title to a tract of land containing 308 acres, and by purchase another tract of 120 acres. It is alleged that the husband is in possession of the land, and refuses to surrender it to the appellant. She, therefore, prays that the possession of it be adjudged to her. The question involved is whether under the act referred to the rights of the husband—as they existed at the time of its passage—to the use of the land have been destroyed; that is to say, did the legislature intend to deprive husbands of their interests in the lands of their wives, or, if it so intended, did it have the power to do so?''

After defining what the husband's rights were in the personal and real property of the wife at the common law and quoting Section 1, Article 2, Chapter 52, General Statutes, with respect to the husband's interest in the wife's real and personal estate, the opinion proceeds as follows:

''This section (Section 1, Article 2, Chapter 52, General Statutes) was in force at the time the parties to this action were married, and at the time the wife acquired the land. It gives the husband the use of the wife's land, with power to rent it for not more than three years at a time, and receive the rent. It does not allow this rent to be subjected to the payment of his debts, because the legislature thought it wise to place it in the power of the husband to appropriate the rents for the benefit of his wife and children, if he chose to do so. In obedience to the requirements of the statute, this court has repeatedly held that the rents of the wife's land could not be subjected to the payment of the husband's debts. If the husband cultivated the land himself, then the products of the land have been adjudged to belong to him. The court, in Moreland v. Muall, 14 Bush, 474, held that corn standing on the wife's land (her general estate) is subject to levy and sale under execution against the husband. While the rent of the wife's land is not liable for the husband's debts, yet, as between the husband and wife, the rent belongs to him. Barnes v. Burbridge, 7 Ky. Law Rep., 445. While, under the act in force when the parties married and when the land was acquired, the husband's interest in the wife's land was

not so great as at common law, still it is a vested right; and the legislature could not deprive him of the use of his wife's land, and the right to rent it for three years at a time. The act of 1894 declares that marriage shall give to the husband no interest in the wife's property, and that she shall hold it and own it for her separate and exclusive use, free from the debts and control of her husband. The act is not retrospective in its operation. It cannot take from a husband the rights which existed under the law in force at the time of its passage. It is said by Mr. Cooley, in his work on Constitutional Limitations (5th Ed., p. 442): 'At the common law the husband, immediately on the marriage, succeeded to certain rights in the real and personal estate which the wife then possessed. These rights became vested rights at once, and any subsequent alteration in the law could not take them away.' * * * It is hardly necessary to observe that, if Mrs. Rose should be divorced from her husband, she is entitled to be restored to the possession and use of her land; or should she, in an appropriate proceeding, show herself entitled to alimony, or equitable settlement, the products of her land, or the rents thereof, would be subject to the payment of it in the same manner and to the same extent as they would be if the land belonged to the husband. This is upon the idea that the products of the land, or the rents of it, belong to him.''

In Mitchell v. Violett, 104 Ky., 77, the same construction was given the Weissinger Act. The facts in that case were, that the appellant, Mitchell, and his wife married in 1887. A child was born of this marriage in 1889. The wife died in 1895, the year following the passage of the Weissinger Act, leaving surviving her the husband and daughter. The question for decision was whether the husband was entitled to a life estate in the whole tract of land left by the wife as tenant by the curtesy, as provided by the statute in force when the marriage was entered into and her title to the real estate acquired, or to a life estate or dower in one-third thereof, as provided by the Weissinger Act. In the opinion it is said:

''To properly solve the question, it is necessary to determine whether the life estate which the law that was in force at the time of their marriage and the acquisition of the property by the wife gave the husband as curtesy is a vested right. If it is, then the legislature could not deprive the husband of it without his consent.''

After quoting from the reasoning in Rose v. Rose, *supra,* and expressing the court's approval of the doctrine therein announced, the opinion concludes as follows:

"As the marriage took place and the land was acquired by the wife before the act of 1894 took effect, the husband takes an estate for life as tenant by the curtesy. The act of 1894 cannot operate retrospectively, so as to divest the husband of his vested rights in his wife's real estate. Although a marriage took place before the act of 1894, still, if the land was acquired by the wife after that date, the husband is not entitled to a life estate in it, but to the use of one-third thereof during his life, as provided by the statute."

There has been no departure in this jurisdiction from the rule announced in Rose, etc., v. Rose, etc., and Mitchell v. Violett, *supra.* On the contrary, it has been reaffirmed in the following later cases: Mundo v. Anderson, 109 Ky., 147; Phillips v. Farley, 112 Ky., 839; Helm v. Bond, 114 Ky., 239; McFarland v. Hatchett, 118 Ky., 424; Williams v. Kaufmann, 31 R., 153; Moore v. Hall, 32 R., 57; Fowler v. Fowler, 138 Ky., 326.

It is manifest from the foregoing authorities that, as the marriage of appellant occurred and all the real estate owned by her was acquired before the passage of the Weissinger Act, and that her husband, the decedent, H. C. Tucker, took control thereof from the time it came into her possession and cultivated and used it for his own purposes, he was entitled to whatever crops he raised thereon or sold therefrom, as well as such rents as he may have received therefor, down to the time of his death; and the same is true as to the timber he sold from the lands; therefore the various charges for rent, the value of crops and timber received upon or sold by him from her lands, for and during the years set out in her claim against his estate, were and are not legally recoverable by her.

While it is apparent from the evidence that the rents and profits derived from appellant's lands for and during the years embraced by her claim against the decedent's estate, were received and appropriated by him, it is equally apparent from the evidence that they were realized by his industry and thrift and used for the benefit of his family, or invested in lands to which he took the title.

As to the $700.00 in money which appellant's father gave her at or about the time of her marriage, its admitted use by her husband, to whom she delivered it before the Weissinger Act became effective, constituted a conversion of the money by him and made it absolutely his property. Therefore, she was not entitled to recover that sum, or any part thereof, of his estate.

The item of $500.00 contained in her claim was also properly disallowed by the circuit court. It is the contention of appellant that this sum of $500.00 was borrowed by her husband from her mother and the money used by him, but that he induced her to sign the note as the ostensible borrower of the money and principal in the note, and that this $500.00, after the mother's death, was paid by her husband to the administrator of the mother's estate, in part with money that was received by her as an heir-at-law of the mother, and in part with money which he received for crops grown upon her lands. It is sufficient to say of this item that it is not satisfactorily sustained by the evidence introduced for that purpose, some of which was incompetent and the remainder so indefinite as to be unconvincing.

In our opinion, the judgment of the circuit court properly determined the rights of the parties; therefore, it is affirmed.