L. S. Mitchell, etc., v. J. T. Violett, etc.

CASE 8—IN EQUITY—JUNE 4.

# L. S. Mitchell v. J. T. Violett, next friend, Etc.

### APPEAL FROM CARLISLE CIRCUIT COURT.

MARRIAGE—VESTED RIGHTS—CURTESY INITIATE—EFFECT OF ACT OF 1894.—Under the act of 1846 defining the husband's right in his wife's realty, the former became entitled, upon the birth of issue, to a vested estate as tenant by the curtesy initiate; and the subsequent enactment of the act of 1894, on the same subject, did not operate to devest that right.

JOHN W. RAY AND J. D. WHITE FOR APPELLANT.

1. At common law tenancy by the curtesy initiate became a vested estate upon the birth of issue; 2 Blackstone, 126; 2 Kent, 130; subject to be defeated, however, by divorce a vinculo. Hays v. Sanderson, 7 Bush, 489. See further, Pollock & Maitland's History of English Law Before Edward I., vol, 2, p. 412; Coke upon Littleton, 30a; McClain v. Gregg, 2 A. K. M., 455; Murray v. Fishback, 5 B. M., 411; Smith, et ux., v. Long, 1 Met., 486.

2. The act of 1846 did not operate to change the vested character of the estate by curtesy initiate, but simply limited the husband's right of alienation of that estate. Cooley Const. Lim., p. 440; Bishop on Married Women, vol. 2, sec. 43; Washburn on Real Property, vol. 1, p. 189, sec. 51; Tiedeman on Real Property, secs. 108, 109; Dembitz Land Titles, sec. 109, p. 837; 4 Am. & Eng. Enc. Law, p. 962; Ratcliff v. Mason, 92 Ky., 190; Black's Law Dictionary; Jackson v. Jackson, 144 Ill., 274; McNeer v. McNeer, 142 Ill., 388; State v. Fry, 4 Mo., 120; Junction R. R. Co. v. Harris, 9 Ind., 184; Foster v. Marshall, 22 N. H., 491;

104    77
e112   839
e112   840

104    77
114    293

104    77
d134   451

104    77
138    332

L. S. Mitchell, etc., v. J. T. Violett, etc.

Stewart, *et. al.*, v. Ross, *et. al.*, 50 Miss., 776; VanMeter v. Van-Meter's Assignee, 13 S. W. Rep., 24; Brown v. Alden, 14 B. M., 122.

**Z. W. BUGG & SON** FOR APPELLEE.

1. The statute existing at the time of the marriage of Mitchell swept away any right a husband may have had, under the common law, save only the exceptions named thereof; a tenancy by the curtesy initiate is not excepted.

2. It is the established doctrine in Kentucky that marriage is a public institution, subject to the sovereign law of the State. The passage of a statute affecting marital rights of property, can not be said to be such an impairment of a contract as will fall within the constitutional interdiction. Sedgwick on Construction of Constitutional and Statutory Law, p. 601; Oldham v. Henderson, *et. al.*, 5 Dana, 254; Maguire v. Maguire, 7 Dana, 181; Berthelemy v. Johnson, 3 B. M., 90; Cabell v. Cabell's Admr., etc., 1 Met., 319; 14 S. E. Rep., p. 299 (N. C.); 29 S. W. Rep., p. 641 (Ark.); Gen. Stat., chap. 52, art. 2; Ky. Stat., sec. 2132.

JOHN W. RAY FOR APPELLANT IN RESPONSE.

At no time since the rights, if any, were acquired in this case has the Legislature had power to change by enactment the contract, status, or relation of marriage. Gaines v. Gaines, 9 B. M., 308. Further illustrating the points involved in this case, see the following authorities: Rice v. Hoffman, 35 Md., 344; Logan v. Gill, 8 Md., 461; Anderson v. Tydings, 8 Md., 427; White v. Dorris, 35 Mo., 181; Schindel v. Schindel, 12 Mo., 299; Beale v. Knowles, 45 Me., 479; McLellan v. Nelson, 29 Me., 129; Meyer v. Gale, 45 Mo., 416; Harvey v. Wickham, 23 Mo., 112; Cunningham v. Gray, 20 Mo., 170; Bank v. Williams, 17 Pick., 438; Hyde v. Barney, 17 Vt., 280; Brown v. Gale, 5 N. H., 416; Uhler v. Adams, 1 D. C. App., 392; Spreckles v. Spreckles, 116 Cal., 339.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

The appellant, L. S. Mitchell, and his wife, Barbara, were married in 1887. The appellee, Susie Mitchell, the issue of their marriage, was born November 24, 1889. In 1889 the land which is the subject of this controversy

was deeded to Barbara, the wife of L. S. Mitchell and the mother of Susie. The mother died in June, 1895, leaving surviving her the husband and daughter. The question presented for our determination is whether the husband is entitled to a life estate in the whole tract of land as tenant by the curtesy, or to a life estate in one-third, as provided in the act of March, 1894, known as the "Married Woman's Act." To properly solve the question, it is necessary to determine whether the life estate which the law that was in force at the time of their marriage and the acquisition of the property by the wife gave the husband as curtesy is a vested right. If it is, then the Legislature could not deprive the husband of it without his consent.

At common law, as soon as a child of the marriage was born alive, the husband had the right to hold the wife's land during his life, although the wife died without leaving issue. 2 Bl. Comm. 126. This is such a familiar principle, it is unnecessary to call attention to numerous decisions of courts announcing it as a common-law doctrine. At the time the appellant and his wife were married, and at the time she acquired the land, the General Statutes were in force. Section 1, art. 4, c. 52, Gen. Stat., reads as follows: "Where there is issue of the marriage born alive, the husband shall have an estate for his own life in all the real estate owned and possessed by the wife at the time of her death, or of which another may be then seized to her use. Such estates shall, however, be subject to the debts of the wife, whether contracted before or after marriage." This statute is declaratory of the common law, except as hereinafter stated. At common law the husband, on their marriage was given an estate in the land of his wife during her

life. This estate as well as his curtesy initiate could be sold by him or it could be sold by his creditors to satisfy his debts, but the statute which gave the husband the use of the · wife's land and curtesy provided that these interests or estates should not be sold to satisfy a liability of the husband. To that extent the common law is changed. Under the statute which we have quoted, as soon as issue of the marriage is born alive the husband has an estate in his wife's land as tenant by the curtesy initiate, upon the death of the wife his estate in her land is as tenant by the curtesy consummate. When there is issue born alive, he is tenant by the curtesy initiate, which is a vested estate. Under the statute, a wife can not dispose of her real estate unless her husband join with her in the deed of conveyance. It is suggested that its language does not give him an estate in her land as tenant by the curtesy initiate; that it does not realize the existence of such an estate. It is true that the statute does not in terms declare that there is such an estate in the husband, but the language of the statute shows that the husband has curtesy in the wife's land upon issue of the marriage being born alive, which condition at common law gave the husband curtesy initiate. That part of the statute which prevents the husband's creditors from selling his curtesy initiate protects his interests from coercive sale at the suit of his creditors, but the land, including his interest therein, may be sold at the suit of the wife's creditors. The statute only changed the common law so as to make the husband's interest in his wife's land acquired by the marriage, liable for her debts instead of his. As against the wife and her heirs, his interest in it is the same as it was at common law.

If the land, including his interest, has not been sold by the wife's creditors, the interest in it which the marriage gave him has not been affected. It is said by Bishop, Law of Married Women (volume 2, sec. 43) "that, by the birth of a child, the estate, by the mere marital right, is extended in duration, to become an estate, not for the mere joint lives of himself and wife, but for his own life; and that it is this enlarged estate, not the mere possibility, which is termed 'tenancy by the curtesy initiate.' In this view, the husband's rights can not constitutionally be taken away after a child is born." Mr. Cooley (Const. Lim., p. 442), in speaking of the husband's rights in his wife's land, says: "He could have a right as tenant by the curtesy initiate in the wife's estates of inheritance the moment a child was born of the marriage, who might by possibility become heir to such estates. This right would be property, subject to conveyance and to be taken for debts; and must therefore be regarded as a vested right, no more subject to legislative interference than other expectant interests which have ceased to be mere contingencies and become fixed." In the case of Rose v. Rose (opinion delivered June 3, 1898), 104 Ky. 48 [46 S. W. 524], this court held that, where rights of the husband had become vested in his wife's land, it is not within the power of the Legislature to destroy that right. Some of the authorities cited in that case apply equally as well to this case and support our conclusions. Where the interest of the husband in the estate of his wife remains in expectancy merely,—that is to say, until it becomes initiate,—the Legislature must have full right to modify or even to abolish it. Cooley, Const. Lim. (5th Ed.) 442. As the marriage took place and the land was

[6]

acquired by the wife before the act of 1894 took effect, the husband takes an estate for life as tenant by the curtesy. The act of 1894 can not operate retrospectively, so as to devest the husband of his vested rights in his wife's real estate. Although a marriage took place before the act of 1894, still, if the land was acquired by the wife after that date, the husband is not entitled to a life estate in it, but to the use of one-third thereof during his life, as provided by the statute. The judgment is reversed for proceedings consistent with this opinion.