### J. N. Chilton v. Harriett Chilton, et al.

(Decided December 17, 1926.)

### Appeal from Henry Circuit Court.

1. Gifts—Promissory Note, if Intended as Gift to Payee to Take Effect After Maker's Death, was Invalid.—Deceased's promissory note to plaintiff, if a gift from maker to payee to take effect after maker's death, was invalid, since mere promise cannot be recovered upon as a gift.

2. Gifts—Note Given by Mother-in-Law to Son-in-Law could Not be Enforced Against Mother-in-Law's Estate, where Plea of no Consideration was. Interposed.—Promissory note given by mother-in-law to son-in-law could not be enforced against mother-in-law's

estate after her death, where plea of no consideration was interposed.

3. Executors and Administrators—Evidence Held to Support Finding that There was no Consideration for Deceased Mother-in-Law's Note to Son-in-Law.—Where son-in-law claimed that consideration for promissory note given him by deceased mother-in-law was services performed for her, evidence held to support finding that there was no consideration for note.

4. Husband and Wife—Deed by Married Woman, Not Signed by Husband, was Void (Ky. Stats., Section 506).—Where husband did not join in deed by wife to her mother conveying property left by father, wife's deed was void, in view of Ky. Stats., section 506.

5. Limitation of Actions—Grantee in Deed from Wife, Not Signed by Husband, did Not Acquire Title by Adverse Possession, where Wife Died Only Five Years Before Grantee's Death.—Where wife gave deed, in which husband did not join, to her mother, grantee did not acquire title by adverse possession, where wife had died only about five years before mother's death, since statute of limitations did not begin to run against wife under disability until her death.

6. Dower—Deed from Daughter to Mother of Part of Land Left by Deceased Father in Exchange for Deed from Mother to Other Land Held to be Assignment of Widow's Dower.—Deed from daughter to mother, which was void because husband had not joined, to part of land left by deceased father in exchange for deed from mother of other land left by father, held to be assignment of widow's dower.

7. Adverse Possession—One Taking Possession of Land Under Verbal Contract did Not Acquire Title by Adverse Possession.—Where one having no deed took possession of land under verbal contract by which he was to have land in consideration for paying share of purchase money for other land, he did not acquire title by adverse possession.

8. Subrogation—One Paying Purchase Money on Certain Land for which he was to Receive 20 Acres Under Verbal Contract Held Entitled to Subrogation to Rights of Lienholder on Land.—Where son-in-law under verbal agreement with mother-in-law paid part of balance of purchase price on certain land left by deceased father-in-law with understanding that he was to receive 20 acres, and thereafter held and possessed the 20 acres claiming it as his own, he was entitled to be subrogated to rights of lienholder on land.

9. Curtesy—One Claiming Curtesy in Land Left by Deceased Father-in-Law was Entitled to Curtesy Only in Land of which Deceased Wife was Seized in Fee Simple During Coverture (Ky. Stats., Section 2132).—Son-in-law, claiming right of curtesy in lands left by deceased father-in-law, held entitled to curtesy only in lands which mother-in-law had conveyed to his deceased wife of which

she was seized in fee simple during coverture, under Ky. Stats., section 2132.

H. K. BOURNE, JOHN D. CARROLL and JOHN S. CARROLL for appellant.

TURNER & TURNER and WILLIAM B. MOODY for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming in part and reversing in part.

Appellant, Chilton, by this litigation sought the settlement of the estate of Martha G. Hayden, the assignment of curtesy to him out of the landed estate of Mrs. Hayden and the recovery on a note of $4,000.00 due, as he averred, from the estate of Mrs. Hayden. The lower court adjudged him entitled to curtesy in the lands of his wife, which was two-ninths of the entire Hayden tract, and directed that it be laid off to him, and found that the $4,000.00 note sued on was executed by Martha Hayden but without consideration, and was, therefore, void and uncollectable. From that judgment he appeals.

The original note is in the record and is written on a small piece of cheap pencil notebook paper, and reads:

"February 14, 1919.

"One day after date i promest to pay the sum of Fore thousandes doll Nobe Chilton. Mattie Hayden."

The answer of the administrator put in issue the genuineness of the note, and averred that it was given and obtained without consideration and by the exercise of undue influence on the part of the payee. The issue was accepted by the plaintiff and a great number of depositions taken on each side. To support his contention that the note was given for a valuable consideration Chilton introduced some members of his family and neighbors who testified that he performed services for Mrs. Hayden. The sum and substance of the evidence for Chilton is that Chilton was the son-in-law of Mrs. Hayden, having married her daughter about 1897, and soon thereafter moved into the home of Mrs. Hayden and his wife. Mr. Hayden had died only a short time before, leaving a farm of about 140 acres and improvements, with farming implements, live stock and the like sufficient to run it. Chilton had nothing. He continued to live in the home of the

mother-in-law from his marriage until about 1920.. In the meantime his wife, Josie, had died childless and he continued to live in the house with his mother-in-law. Later he purchased a home at Turner's Station near some land he had acquired since his marriage and he and his mother-in-law moved to the new home. There she kept house for him while he did the work on the farm. After the death of Mr. Hayden, the mother and daughter, by agreement, divided the Hayden lands, the mother taking about 63 acres and the daughter the balance. From the 63 acres Mrs. Hayden received the proceeds each year, sold it and placed such money as she could save in the bank. Chilton was managing the whole of the Hayden farm and some land that he inherited from his father. He took good care of the lands, made improvements thereon and accumulated considerable property and money on his own account. All the witnesses say that Chilton was kind to his mother-in-law and looked after her interest carefully, and they also say that the mother-in-law was kind to Chilton and did many things for him; that they lived together as one family apparently for their mutual benefit and advantage, each performing part of the services. She furnished the home for all the family for many years and he furnished the home for the last few years of the life of the mother-in-law, who died about 1923 or 1924.

It is the contention of appellant, Chilton, that the consideration of the note was his services performed in the manner indicated above, and he points to the fact that some of the witnesses say that the mother-in-law frequently spoke words of praise concerning the son-in-law and said that he was good to her, and that he had attended to her business and helped her to have a home, and that she "wanted Noble Chilton to have her property." There is, however, no competent proof showing for what the note was given or that it had any consideration other than the services which he performed as a member of the family. On the contrary, there is much evidence tending to show the note was intended as a gift. If the note was a gift from the maker to the payee, to take effect after the death of the maker, it was invalid, for a mere promise can no more be recovered upon as a gift than any written promise of the donor. The law is well settled that a promissory note given by a parent or relative to a child or other relative can not be enforced

against the estate after his death if the plea of no consideration is interposed. Callender's Admr. v. Callender, 24 Ky. Law Rep. 1145, 70 S. W. 844. In that case Callender gave a note to his son, Lewis Callender, for $6,000.00, payable one day after date, just as this note. In that case as in this, there was no consideration for the note except survices and kindnesses rendered as a member of the family, and the court said:

"There was no talk of any consideration for the note, and it was plainly intended, if credence is to be given to the testimony of these witnesses, as a gift to take effect at the death of the old man. And the law is well settled that promissory notes given by the father to his children can not be enforced against the estate after his death, where a plea of no consideration is interposed."

In the case of Graf v. Graf, 150 Ky. 226, the note sued on reads:

"April 25, 1911.

"On demand I promise to pay to Albert Graf one thousand ($1,000.00) dollars, for kindness and services rendered during sickness.

"AUGUST GRAF."

It is almost exactly like the note before us, except it recited the consideration for which the note was given, and in that respect is somewhat stronger than the note now presented. The note in the Graf case was given "for kindness and services rendered during sickness," but the note in question now was not even given for that, for it was executed some four or five years before the death of Mrs. Hayden, and at a time when she was in fairly good health and able to keep house for her son-in-law, the payee. He kept it for several years in his trunk without attempting to collect it, and in fact admits that he did not intend to collect it until after her death. Along about the same time the mother-in-law gave to Chilton some large checks which he also kept until after the qualification of the administrator, and then attempted to collect them, all of which tends very strongly to prove that the note as well as the checks were intended as gifts to take effect after the death of the maker, and brings the case squarely within the Graf case and the Callender case, *supra*. After reading and considering all the evidence the learned

chancellor decided that there was no consideration for the note, and held it void, and we can find no sound reason for disturbing that finding. There was considerable evidence introduced to show that the note was not genuine and did not bear the proper signature of Mattie Hayden, the alleged maker, but we shall not go into a consideration of that question as it is wholly unnecessary in view of the fact that we have reached the conclusion that the note was without consideration.

Appellant also complains that the trial court failed to recognize his right to curtesy in all the lands belonging to the Hayden estate but only allowed him curtesy in a part thereof. Of the 146 acres of land owned by Mr. Hayden at the time of his death in 1897 there was one small tract on which he owed $2,000.00 purchase money, and which was paid by appellant Chilton and the widow after the death of Hayden under an agreement made between them, whereby Chilton was to have 20 acres of the farm, laid off and designated, in consideration of his paying one-half of the $2,000.00 lien debt. Chilton paid his share of the debt and took possession of the 20 acres some twenty years before the death of his wife and twenty-five years before the death of the widow, and he held and claimed it thereafter as his property, listing it for taxation and paying the taxes. Now he insists that he is entitled to curtesy in all of the Hayden lands, except the 20 acres, and if for any reason he cannot hold the 20 acres he should have curtesy in that also. The widow by deed conveyed to the wife of Chilton 83 acres and the wife of Chilton by deed conveyed to the widow 63 acres, but Chilton did not join in the deed with his wife, therefore the deed of the wife was void. Section 506, Kentucky Statutes; Simpson, et al. v. Smith, 142 Ky. 608.

But it is said that the widow, having color of title under the deed from his wife and holding and claiming the lands for more than the statutory period, became the owner by adverse possession of that part covered by the deed of the wife. This cannot be true because the wife was at the time of the conveyance under the disability of coverture and remained so until her death in 1919, only about five years before the death of the widow. The statutes of limitation did not begin to run against the wife under disability, and the claim of the widow under the statutes could not have begun to run in her favor until the death of the wife in 1919, therefore the widow did not ac-

quire title by adverse possession. She, however, owned a dower interest in the Hayden lands, and it may be considered, in view of all the facts, that the division of the land between the wife, Mrs. Chilton, a child and the widow, was an assignment of dower to the widow and that she took and occupied the 63 acres covered by the deed of the wife as a dower in her deceased husband's estate, whereas the balance of the farm passed to the daughter, who was the only heir and owner of the estate in remainder. As Chilton had no deed to the 20 acres which he was to have under the verbal contract, it cannot be said that his possession ripened into title by adverse possession, because his wife was the owner of the fee in remainder, and was under disability for more than twenty years after he took possession of the 20 acres and continued so until a short time before this suit was instituted. Chilton, however, is entitled to be subrogated to the rights of the lien holder upon the land, he having in good faith purchased the 20 acres and paid the price, thereafter holding and possessing the 20 acres, claiming it as his own. He at least had a resisting equity and he cannot be ousted from the possession of the twenty acres until he has been reimbursed the money paid by him on the purchase price. Crain v. Crain, 197 Ky. 814.

Under section 2132, Kentucky Statutes, a surviving husband is entitled to curtesy in one-third of all the real estate of which the wife was seized of an estate in fee simple during the coverture. We have held, however, that where a testator devised land to his wife, remainder to his daughter, and the daughter marries and dies before the termination of the life estate, the husband of the daughter is not entitled to curtesy because the wife was never seized of an estate in fee simple during a coverture. Moore, &c. v. Calvert, etc., 6 Bush 356. The wife of appellant, Chilton, was never seized of an estate in fee simple in all the lands of the Hayden estate, but at most only of the 83 acres of which she had actual possession during the coverture. This tract includes the 20 acres claimed by the husband, and to the whole of that tract the husband, appellant Chilton, is now entitled to an assignment of curtesy. His claim of curtesy in that part of the Hayden farm held by the widow cannot be sustained because the wife of Chilton was never seized of an estate in fee simple in that part of the land during coverture. The

lower court will modify the judgment in accordance with the views herein expressed.

For the reasons indicated, the judgment is affirmed in part and reversed in part.